UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LEGEND'S CREEK LLC, JON RESTIVO and ADEN MOTT )<br>Plaintiffs )<br>Vs. )<br> )<br>THE STATE OF RHODE ISLAND and the )<br>RHODE ISLAND DEPARTMENT OF HEALTH )<br>Defendants ) | C.A. No. 22-cv-309 |

COMPLAINT

Plaintiffs bring this complaint alleging violation of their rights under the Fifth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 2 and 16 of the Rhode Island Constitution, and 28 U.S.C. §§ 1981, 1983, and 1988. Plaintiffs allege that Defendants violated their civil rights by a wrongful taking of their property.

THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Legend's Creek LLC is a limited liability company formed under Rhode Island law and which operated as Legend's Creek Farm. At the time of the relevant events, it was located and operating in Rhode Island. Legend's Creek LLC's principal place of business is now located in Vermont.

2. Plaintiffs Jon Restivo and Aden Mott are the members of Legend's Creek LLC. At the time of the relevant events, they were citizens and residents of the State of Rhode Island. They are now citizens and residents of the State of Vermont.

3. Defendant Rhode Island Department of Health ("RIDOH") is an agency of the Defendant State of Rhode Island. RIDOH regulates the installation and use of commercial kitchens and public water supply systems in Rhode Island, including the issuance of permits for such facilities.

1

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiffs allege Defendants have violated the United States Constitution.

5. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391 because Defendants are located in this district and the events giving rise to Plaintiffs' claims occurred here.

## FACTS

6. Restivo and Mott have been married since 2007.

7. Restivo and Mott formed Legend's Creek Farm on March 16, 2012 for the purpose of selling personal care products through the internet.

8. Restivo is an attorney with Darrow Everett in Providence, Rhode Island.

9. Mott attended Norfolk County Agricultural High School and managed Legend's Creek Farm with Restivo's assistance.

10. Restivo originally purchased a property at 38A Hartford Pike, Foster, Rhode Island ("the Hartford Pike Property") at which Mott and he resided and operated Legend's Creek Farm. However, Plaintiffs wanted to grow raw materials and process food products using those raw materials as well as materials provided by third parties on their own property and operate a commercial kitchen on the property. A RIDOH official told Mott that the Hartford Pike Property could not accommodate these uses because of wetlands on the Property.

11. Accordingly, in July 2014, Restivo purchased the property at 27 Mill Road in Foster ("the Mill Road property") for $396,750. It was zoned Agricultural Residential with a legal, pre-existing non-conforming commercial use. Restivo and Mott resided at the property and operated Legend's Creek Farm at that location until 2020.

12. Plaintiffs initially grew some raw materials on the farm, including honey as well as some herbs used in herbal salves, and originally made bar soap using soap from goats raised on the farm,

but they also purchased other materials. They processed the personal care products on the property to varying degree depending on the product.

13. In 2014, the Mill Road Property had two dug wells and one drilled well at the time. The drilled well was not operable according to Plaintiffs' engineer, Robert Ferrari. One of the two dug wells was contaminated with bacteria because of a pond on the property. The other dug well serviced a separate building on the property but was otherwise usable. Much of the Property is wetlands and wetland buffer areas under Rhode Island law and cannot be used for other purposes.

14. Under RIDOH regulations, to process and sell food, Legend's Creek Farm needed a commercial kitchen. Legend's Creek Farm built a new barn but RIDOH will not let them put the commercial kitchen in the barn without a public water supply permit. This permit required a public water supply from a well on the property. RIDOH indicated that the existing dug well that was Plaintiffs' water source would not meet RIDOH requirements.

15. In 2018, Legend's Creek Farm filed an application with RIDOH for a new public water supply source in the form of a drilled well.

16. Plaintiffs also filed applications with other state and local governmental entities for necessary permits and approvals, including the Rhode Island Department of Environmental Management ("RIDEM") for a septic system, and the Town of Foster for a building permit.

17. The RIDOH regulations state that the well must be on their property and that it must be 200 feet or more from their property line. However, RIDOH has granted variances from this requirement to others.

18. The RIDOH regulations also require applicants to identify all potential sources of pollution within 1750 feet of the proposed drinking water source (the well) on a map. Legend's Creek

Farm understood that the purpose of this requirement is to provide for testing to determine whether the water on the property to be used is contaminated by nearby sources of pollution. The RIDOH regulations do not state the well must be 1750 feet from any possible source of pollution and RIDOH has admitted that the regulations do not so state. RIDOH has granted other applications for public water supply systems despite the presence of a potential source of contamination within 1750 feet. Moreover, even when a public water supply system permit is granted, the permit-holder must test the well for contamination periodically and report the result to RIDOH.

19. On July 12, 2018, Legend's Creek Farm filed the application and identified an adjoining junk yard, Wright's Auto Salvage ("Wright's" or "the junkyard"), on the map as a possible source of pollution. Wright's has been in business for about 60 years. It is regulated by RIDEM.

20. On information and belief, RIDOH asked RIDEM about Wright's. RIDEM said it had done a visual inspection of Wright's and Wright's had reported it was not polluting but RIDEM had no information on the groundwater under Wright's. RIDEM has the authority to test the groundwater and the water in Hemlock Brook which separates Wright's from the Mill Road Property. RIDOH did not feel RIDEM's inspection addressed the issue of possible groundwater contamination.

21. Based on their discussions with RIDOH personnel and to establish that the proposed well could produce potable water, Legend's Creek Farm proceeded to hire a company to drill the well. Ferrari, who provides training for RIDOH officials, selected the site for the well as set forth in the application. It is 800 feet deep and produces potable water.

22. Legend's Creek Farm also proceeded with the other work necessary to operate the food processing business including building the septic system, constructing the barn and outfitting

the space where the commercial kitchen is intended to go with code-compliant building materials.

23. On October 5, 2018, RIDOH denied the application stating that "The existence of this significant source of pollution [Wright's] within the wellhead protection area, is inconsistent with the Regulations." RIDOH was unable to identify with what part of the Regulations this was inconsistent.

24. RIDOH admits it has no data showing any actual contamination of the Mill Road Property's groundwater. However, it took the position that the possibility of groundwater contamination by Wright's is sufficient reason to deny Legend's Creek Farm's application.

25. With regard to surface water, the Legend's Creek Farm property is upgradient from Hemlock Brook, the stream separating Legend's Creek Farm from Wright's. Most of the Wright's property slopes away from the Brook but some does slope towards the Brook. The Brook would carry any pollution in surface water towards Barden Reservoir which feeds into the Scituate Reservoir and which is the largest reservoir in the State. RIDOH ensures that the water from the Scituate Reservoir meets drinking standards. RIDOH states it has no concerns that Wright's is contaminating Hemlock Brook and causing significant contamination in the Scituate Reservoir. Accordingly, it is highly unlikely that any pollution in surface water would move from the junkyard to the Legend's Creek Farm property.

26. With respect to groundwater, RIDOH does not know in what direction it would flow from Wright's. Ferrari believes it is much more likely that any groundwater pollution from the junkyard would move downgradient toward the Barden Reservoir.

27. On November 5, 2018, Legend's Creek Farm submitted a written appeal of RIDOH's initial decision.

28. On November 15, 2018, Anita Flax, who represents the Department of Health, advised Restivo that any supplemental information should be submitted as part of a revised application, as "any evidence presented at an appeal hearing that was not presented in the original application will have no bearing on the denial of that application."

29. Plaintiffs requested meetings with RIDOH personnel and they were eventually told in March 2019 that the application was denied because the well had to be both 200 feet from any of their property lines and 1750 feet from the adjoining junkyard and no location on the property met that requirement.

30. Plaintiffs asked how they could get a variance from the "1750 foot" requirement that RIDOH officials were imposing because that requirement is not set forth in a regulation. RIDOH could not give an answer.

31. On April 9, 2019, Legend's Creek Farm and Ferrari had a meeting with RIDOH and a RI Department of Administration small business ombudsman. During that meeting, RIDOH said there was no possible way to install a public water supply on the property. RIDOH said it would never have encouraged Legend's Creek Farm to proceed with its original application if it had been aware of the proximity of the junkyard. Legend's Creek Farm asked RIDOH not to make a decision on the second well-permit application.

32. On April 19, 2019, RIDEM issued a "notice of intent to enforce action" against Wright's for altering wetlands without a permit, discharging pollutants into state waters without a permit, and illegally discharging stormwater. Wright's did not have a current junkyard business license. However, RIDEM said it could not say whether Wright's violations had caused groundwater contamination.

33. On information and belief, Wright's has reported to RIDEM that it is not polluting the groundwater. No state agency has taken any action against Wright's with respect to groundwater pollution.

34. RIDOH claims the likelihood of groundwater contamination from Wright's is "very high" but it cannot quantify the likelihood that it is polluting the groundwater under Legend's Creek Farm because there are too many unknown variables. RIDOH has no actual evidence that any groundwater pollution is moving from Wright's onto the Mill Road Property nor has it even tested or performed any analysis.  It assumed there is pollution. RIDOH has no evidence that water Legend's Creek Farm was taking from the well for private use is not safe.

35. If Wright's was polluting the Mill Road Property that would probably constitute violations of the Rhode Island Clean Water Act, R.I.Gen.L. § 46-12-1, et seq., and the Rhode Island Hazardous Waste Management Act, R.I.Gen.L. § 23-19.1-1, et seq.  In addition, it would constitute a trespass on the Mill Road Property, among other torts.

36. RIDOH had not previously denied an application in which the applicant's well was 200 feet from its property line and there was no source of pollution within that 200 feet.

37. RIDOH told Plaintiffs it might approve the permit if it had assurances, through a hydrogeologic study, that groundwater does not move from the junkyard to the Legend's Creek Farm property. However, RIDOH did not commit to approving the permit even if the study showed no contamination. Ferrari has estimated that the cost of the study would start at $80,000, and could increase significantly depending on the specific parameters of such a study.

38. Legend's Creek Farm offered to conduct regular testing of the well once RIDOH issued the permit but RIDOH rejected that offer because the proposed testing would not cover all the possible pollutants that RIDOH thought might issue from a junkyard.

39. RIDOH's condition of hydrogeologic testing effectively imposed a condition that Legend's Creek Farm fund a determination of whether the adjoining junkyard is polluting the nearby groundwater and, possibly, the Scituate Reservoir.

40. RIDEM says it will not issue a certificate of conformance for the septic system until the well-permit is approved.

41. A review of other RIDOH well-permit application files shows that RIDOH has approved other wells with actual evidence of some contamination, has never previously enforced this 1750 foot "requirement," and has approved variances on the 200-foot requirement. It has approved hundreds of permits for wells within 1750 feet of a source of pollution.

42. RIDOH admits that the Legend's Creek Farm permit complies with the literal language of the regulation, in part, because there is no source of contamination within 200 feet of the well. However, RIDOH now interprets the regulation to allow it to deny permit applications for wells within 1750 feet of a potential source of pollution. It claims the junkyard is a significant potential source of pollution.

43. Legend's Creek Farm has expended $594,465 on improvements to the property to operate its business, including amounts spent to obtain the well permit.

44. Plaintiffs reasonably believe the property would be worth over $1 million dollars if the well-permit was approved. On November 11, 2020, it listed the property for sale at $1.2 million. Some buyers who expressed an interest in the property inquired about the status of the permit application. Legend's Creek Farm informed them the application was denied and RIDOH's reasons. Legend's Creek Farm never heard back from those buyers. Two realtors told Restivo and Mott that they would not list the property for sale until the well-permit issue is resolved.

45. Legend's Creek Farm was a profitable company, however, on July 1, 2020, Restivo and Mott sold the Legend's Creek Farm brand to an Idaho company because it had become so successful that they could not accommodate its growth on the Mill Road Property due to the unresolved status of the public water supply permit.

46. Restivo and Mott had hoped to start a family by now which can be very expensive for a gay couple. However, they have had to expend their money on their fight with RIDOH over this public water supply system permit.

47. On November 30, 2020, after an administrative hearing, RIDOH issued a written decision recommending that Legend's Creek Farm's application for a permit be denied. On December 3, 2020, the Director of RIDOH adopted the decision and recommendation.

48. On December 29, 2020, Legend's Creek LLC filed an administrative appeal of the RIDOH decision in Rhode Island Superior Court.

49. On January 19, 2021, Restivo accepted an offer of $804,000 for the Mill Road Property. He would not have sold the property if Defendants had allowed the public water supply permit.

50. On April 22, 2022, the Superior Court rendered a bench decision holding that Plaintiffs no longer had standing to seek the public water supply permit. On May 23, 2022, the Superior Court entered an order denying the appeal.

51. Plaintiffs have substantial economic damages in that the denial of the public water supply system permit prevented Legend's Creek Farm from operating a commercial kitchen on the Mill Road Property which would have generated significant profits for the business consistent with Plaintiff's substantial investment in the business. In addition, the denial of the permit significantly restricted the economic appreciation of the value of the Mill Road Property. Further, Restivo's and Mott's substantial expenditures of their personal funds in a fruitless

attempt to obtain the permit prevented them from starting a family and caused them great personal distress. Plaintiffs' economic and personal damages are millions of dollars.

## CAUSES OF ACTION

### COUNT I-PER SE PHYSICAL TAKING WITHOUT COMPENSATION BY IMPOSITION OF NEGATIVE OR RESTRICTIVE EASEMENT

52. Plaintiffs reallege the allegations of Paragraphs 1-51.

53. Defendants' refusal to permit Plaintiff Legend's Creek Farm to operate a public water supply well on its property because the adjoining junkyard might be polluting the ground water or water table constitutes the imposition of a negative or restrictive easement on the Mill Road Property in favor of the junkyard.

54. Defendants have not compensated Plaintiffs for the imposition of the negative or restrictive easement.

55. The failure to compensate Plaintiffs for the imposition of the negative or restrictive easement constitutes a taking in per se physical violation of the Fifth Amendment of the United States Constitution and Art.1, § 16 of the Rhode Island Constitution.

56. The per se physical taking had a severe economic impact on Plaintiffs because it greatly diminished the market value of Legend's Creek Farm and of the Mill Road Property.

57. As a direct and proximate result of defendants' actions, plaintiffs have been or will be deprived of their property rights in violation of 28 U.S.C. §§ 1981 and 1983, suffered severe economic damages, and have been deprived of the opportunity to start a family.

### COUNT II-REGULATORY TAKING WITHOUT COMPENSATION

58. Plaintiffs reallege the allegations of Paragraphs 1-57.

59. Defendants' refusal to permit Plaintiff Legend's Creek Farm to operate a public water supply well on its property because the adjoining junkyard might be polluting the ground water or water table constitutes a regulatory taking.

60. The regulatory taking has had a severe economic impact on Legend's Creek Farm because it has significantly diminished the combined market value of the business and the Mill Road Property by many hundreds of thousands of dollars.

61. Further, the regulation has interfered with Plaintiffs' distinct investment-backed expectations because Restivo purchased the Mill Road Property with the intention that Plaintiffs would grow and sell agricultural products on the site and RIDOH mandates that Legend's Creek Farm operate as a commercial kitchen which, in turn, requires a public water supply on the property.

62. Defendants' action constitutes a taking of Plaintiffs' property in favor of the adjoining junkyard because the junkyard may be polluting the groundwater or water table is contrary to Rhode Island public policy and not in the public interest because any such pollution would likely flow into the Scituate Reservoir and would violate the Rhode Island Clean Water Act, R.I.Gen.L. § 46-12-1, et seq., and the Rhode Island Hazardous Waste Management Act, R.I.Gen.L. § 23-19.1-1, et seq.

63. Further, Defendants' action improperly shifts the regulatory burden of determining whether the junkyard is polluting the groundwater to Plaintiffs, improperly places the burden on Legend's Creek Farm of disproving that the junkyard is polluting, and, if the junkyard is polluting the Mill Road Property groundwater, essentially permits the junkyard to trespass on the Mill Road Property.  This prevents Legend's Creek Farm from operating a business beneficial to the public interest rather than requiring the junkyard to remediate its pollution.

64. As a direct and proximate result of defendants' actions, plaintiffs have been or will be deprived of their property rights in violation of 28 U.S.C. §§ 1981 and 1983, suffer severe economic damages, and have been deprived of the opportunity to start a family.

## COUNT III-VIOLATION OF PROCEDURAL DUE PROCESS

65. Plaintiffs reallege the allegations of Paragraphs 1-64.

66. Defendants' regulations, as written, do not require that a public water supply system be at least 1750 feet from any potential source of pollution. Rather, Defendants arbitrarily imposed that subjective and overbroad requirement on Plaintiffs for the very first time.

67. This arbitrary enforcement violates the Fourteenth Amendment of the United States Constitution.

68. Defendants' application of their regulations is overly broad because there is no empirical evidence that having a potential source of pollution within 1750 feet of a public water supply system means the public water supply system will be contaminated. To the contrary, it is likely that in this and in many other situations, the geological circumstances will result in any pollution being carried away from the public water supply system.

69. On their face, Defendants' regulations are unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause because a person of ordinary intelligence would not know that the regulations prohibit any water supply system within 1750 feet of a junkyard, and because the statute lacks clear standards and objective criteria thus allowing Defendant to bar Plaintiffs' water supply system based on ambiguous, subjective, arbitrary or discriminatory reasons.

70. As a direct and proximate result of defendants' actions, plaintiffs have been or will be deprived of their property rights, severe economic damages, and have been deprived of the opportunity to start a family.

## COUNT IV-VIOLATION OF STATE ADMINISTRATIVE PROCEDURE ACT

71. Plaintiffs reallege Paragraphs 1 through 70.

72. By statute, RIDOH is authorized to promulgate regulations pursuant to the Administrative Procedure Act, R.I.G.L. §42-35-1 ("the APA").

73. RIDOH is a department within the executive branch of Rhode Island Government. R.I.G.L. §42-56-2.

74. Section 42-56-12 of the Rhode Island General Laws, 1956, as amended, directs and authorizes the director of RIDOH to make and promulgate necessary rules and regulations incident to the exercise of her powers and the performance of her duties as enumerated therein.

75. RIDOH is an "agency" within the meaning of R.I.G.L. §42-33-1(a), which states: "'agency' includes each state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules . . ."

76. RIDOH is required by the APA to follow the procedures contained in R.I.G.L. §42-35-3(a) which requires the giving of notice of intended action prior to promulgation of rules and regulations, and affording to all interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing on such proposed rules and regulations, all as more fully provided therein.

77. RIDOH has failed follow the requirements of the APA in promulgating any regulation that prohibits public water supply systems within 1750 of a potential source of pollution.

78. RIDOH's application of its interpretation that a junkyard within 1750 feet bars the use of a public water supply system violates R.I.G.L. §42-35-3.

79. There are no administrative remedies available to plaintiffs.

80. Defendants' actions violate plaintiffs' procedural rights under §42-35-9 of the Rhode Island Administrative Procedure Act, R.I.G.L. §42-35-1 et seq.

81. Moreover, defendants' sole reliance on their subjective interpretation and application of the regulation without supporting empirical data relevant to the Mill Road Property is arbitrary and capricious, clearly erroneous and error of law and violates constitutional, statutory and regulatory provisions, R.I.G.L. §42-35-15.

82. As a direct and proximate result of Defendants' actions, Plaintiffs were deprived of their property rights and suffered severe economic damages.

## COUNT V-VIOLATION OF EQUAL PROTECTION, CLASS OF ONE

83. Plaintiffs reallege the allegations of Paragraphs 1-82.

84. Defendants, through their arbitrary and capricious application of their regulations, deprived Plaintiffs of the gainful use of their business and the Mill Road Property, which violates Plaintiffs' rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Art. 1 Sec. 2 of the Rhode Island Constitution, thereby damaging Plaintiffs in violation of 42 U.S.C. §§ 1981 and 1983.

85. As a direct and proximate result of defendants' actions, plaintiffs have been or will be deprived of their property rights, severe economic damages, and have been deprived of the opportunity to start a family.

## COUNT VI-VIOLATION OF SUBSTANTIVE DUE PROCESS

86. Plaintiffs reallege the allegations of Paragraphs 1-85.

87. Defendants' arbitrary, subjective, and unjustified application of their regulations to bar Plaintiffs from operating a public water supply system on the Mill Road Property because the adjoining junkyard is a potential, but unproven, source of pollution, without Defendants investigating whether the junkyard is polluting the groundwater and requiring the junkyard to remediate any such pollution, is so egregious and so outrageous that it shocks the conscience.

88. Defendants' actions violate Plaintiffs' rights to substantive due process.

89. As a direct and proximate result of defendants' actions, plaintiffs have been or will be deprived of their property rights, severe economic damages, and have been deprived of the opportunity to start a family.

WHEREFORE, Plaintiffs hereby demand judgment against Defendants for the amount of their damages, interest, costs, and reasonable attorney's fees.

PLAINTIFFS, LEGENDS CREEK LLC,
JON RESTIVO and ADEN MOTT

*/s/ Thomas W. Lyons*

Thomas W. Lyons, #2946
Rhiannon S. Huffman, #8646
STRAUSS, FACTOR, LAING & LYONS
One Davol Square,    Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

PLAINTIFFS DEMAND TRIAL BY JURY.