UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LEGEND'S CREEK LLC; JON ) 
RESTIVO; and ADEN MOTT, )
    Plaintiffs, )
     )
    v. )    C.A. No. 22-309-JJM-PAS
     )
STATE OF RHODE ISLAND; and )
RHODE ISLAND DEPARTMENT OF )
HEALTH, )
    Defendants. )

# AMENDED ORDER

    Plaintiffs Jon Restivo and Aden Mott operate Plaintiff Legend's Creek LLC, a business located in Foster, Rhode Island (collectively "Plaintiffs" or "Legend's Creek"). Legend's Creek sought a public water supply well permit from the Rhode Island Department of Health ("RIDOH") in order to install a commercial kitchen where it intended to process food product on site. RIDOH investigated and denied its application, finding no definitive evidence that a junkyard located on an adjoining property would not contaminate the groundwater for the public supply well.

    After appealing RIDOH's decision to the Rhode Island Superior Court and being denied, Legend's Creek filed this suit, alleging six counts against Defendants the State of Rhode Island and RIDOH for violating their civil rights by wrongfully taking their property and other due process violations. Before the Court is Defendants' Motion to Dismiss Legend's Creek's Complaint. ECF No. 13.

I.  BACKGROUND

Mr. Restivo and Mr. Mott are members of and operate Legend's Creek, LLC. After selling personal care products over the internet from a location on Hartford Pike in Foster, Mr. Restivo purchased property at 27 Mill Road in Foster hoping to reside there and operate Legend's Creek Farm, where they would grow raw materials and process personal care products. They hoped to eventually operate a commercial kitchen to process and sell food at the farm.

In order to have a commercial kitchen, Legend's Creek needed to apply for a public water supply permit because the existing well did not meet RIDOH requirements. In their application, Plaintiffs identified an adjoining junkyard, Wright's Auto Salvage ("Wright's"), as a potential source of contamination. Plaintiffs allege that RIDOH asked the Rhode Island Department of Environmental Management ("RIDEM") about Wright's and reported that it had no information that the junkyard contaminated the groundwater. Plaintiffs began to drill the well before any permit was issued.

RIDOH denied Plaintiffs' permit application. Plaintiffs later attempted to work with RIDOH who said they might approve the permit if Plaintiffs conducted a hydrogeological study to determine whether Wright's was polluting the groundwater. Legend's Creek Farm and Mr. Restivo filed an administrative appeal of RIDOH's denial to the Rhode Island Superior Court pursuant to § 42-35-15 of the Rhode Island Administrative Procedures Act ("RIAPA"). That court dismissed the appeal when Plaintiffs sold the property for $804,000.

Next, Plaintiffs filed this six count complaint: Count I, Physical Taking under the Fifth Amendment to the United States Constitution and Article 1, § 16 of the Rhode Island Constitution; Count II, Regulatory Taking; Count III, Violation of Procedural Due Process under the Fourteenth Amendment to the United States Constitution and Article 1, § 2 of the Rhode Island Constitution; Count IV, Violation of the Rhode Island Administrative Procedures Act R.I. Gen. Laws § 42-35-15;[1] Count V, Violation of Equal Protection Clause under the Fourteenth Amendment to the United States Constitution and Article 1, § 2 of the Rhode Island Constitution; and Count VI, Violation of Substantive Due Process. They allege damages of lost property value–they believe the property could have sold for over $1 million if it received the public water supply permit–and millions of dollars in lost profits from Legend's Creek's potential business operations. Defendants move to dismiss all counts. ECF No. 13.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant

---

[1] Legend's Creek agrees that the RIAPA claim should be dismissed so the Court DISMISSES Count IV.

has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III.  DISCUSSION

The State seeks to dismiss the five remaining claims under various theories of immunity, preclusion, and for failure to state a claim.

### A.  Eleventh Amendment Immunity

The Eleventh Amendment provides a state immunity from "any suit in law or equity, commenced or prosecuted ... by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This immunity also applies to suits by a state's own citizens. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004).

RIDOH "stands in the shoes of Rhode Island itself, as an arm of the state." *Sinapi v. R. I. Bd. of Bar Examiners*, 910 F.3d 544, 553 (1st Cir. 2018). Therefore, "[a state agency] and its members in their official capacities would appear to be protected by the Eleventh Amendment from any suits for money damages." *Id.*

"Congress, however, has the power to abrogate Eleventh Amendment immunity when properly exercising its power under Section 5 of the Fourteenth Amendment. No immunity protects states from a claim for monetary damages based on 'actual violations' of the Fourteenth Amendment." *Id.* (citing *United States v. Georgia*, 546 U.S. 151, 158 (2006)). Because Plaintiffs' takings claims in Counts I and II allege actual violations of the Fourteenth and Fifth Amendments and the Fourteenth Amendment incorporates the Fifth Amendment against the states, the State's Eleventh Amendment immunity is superseded, and the Court finds that the State is not immune under the Eleventh Amendment.[2]

---

[2] The State also advocates for dismissal under the well "settled beyond peradventure" legal maxim "that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action." *See Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, the First Circuit has held that "a state like Rhode Island, which has waived its eleventh amendment immunity, is a person for 1983 purposes." *Della Grotta v. Rhode Island*, 781 F.2d 343, 348 (1st Cir. 1986); *Marrapese v. Rhode Island*, 500 F. Supp. 1207, 1223 (D.R.I. 1980) ("Rhode Island, through the enactment of § 9-31-1, did consent to liability under § 1983, at least insofar as the challenged official conduct would have been tortious at common law."). The Court declines to weigh in on whether Legend's Creek's takings claims sound in tort considering its conclusions on the unavailability of Eleventh Amendment Immunity on these claims.

### B. Quasi-Judicial Immunity

In this case, RIDOH considered Legend's Creek's permit application, applied the regulations to the facts presented in the application, and issued a decision denying the permit. Defendants argue that they have absolute quasi-judicial immunity afforded by common law because they are adjudicatory bodies that functioned in this case in ways similar to judges. Legend's Creek argues that quasi-judicial immunity does not apply here because it has not sued individual state actors or the State under a theory of *respondeat superior*.

The doctrine of quasi-judicial[3] immunity "provides absolute immunity for public officials, including agency officials, who perform quasi-judicial functions." *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 662 (1st Cir. 2010) (citing *Butz v. Economou*, 438 U.S. 478, 508, 512-13 (1978)); *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) (absolute immunity applies to "agency officials with functions similar to judges and/or prosecutors"; *see Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772, 782 (1st Cir. 1990). The immunity "endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions." *Goldstein*, 719 F.3d at 24 (internal quotation marks omitted); *see also Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698,

---

[3] Quasi-judicial "'is defined as a term applied to the action and discretion of public administrative officers, who are required to investigate facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature.'" *Gray v. Derderian*, 400 F. Supp. 2d 415, 426 (D.R.I. 2005) (citing *Suitor v. Nugent*, 199 A.2d 722, 724 (1964)); *Destek Grp., Inc. v. State of New Hampshire Pub. Util. Comm'n*, 318 F.3d 32, 41 (1st Cir. 2003).

702 (1st Cir. 1995). "'Although this concept of absolute immunity allows some abuses of official power to go unredressed, it is necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability.'" *Goldstein*, 719 F.3d at 24 (quoting *Ricci v. Key Bancshares of Me., Inc.*, 768 F.2d 456, 462 (1st Cir. 1985)); *see also Calhoun v. City of Providence*, 390 A.2d 350, 356 (1978) ("Certain types of activities, as for example judicial decision-making * * * must be engaged in by these officials freely, independently, and untrammeled by the possibilities of personal liability").

Legend's Creek contorts reality to make a distinction that there can be no quasi-judicial immunity for Defendants because they are "the State" and not individual actors. But Legend's Creek's allegations and arguments make clear that the decisions they are suing over were made by individual RIDOH employees. RIDOH officials engaged in judicial decision-making when they denied the permit based on their knowledge, experience, and discretion. *See* ECF No. 11 ¶¶ 29-32 (detailing meetings with individual RIDOH employees making decisions impacting Plaintiffs' application); *See* ECF No. 15 at 19-20 ("Plaintiffs allege that the Defendants' actions in denying them the public water supply permit based on the mere theoretical possibility of contamination from an adjoining property constitute a taking in violation of the federal and state constitutions."). "While immunizing officials from personal liability is, of course, a separate concept from governmental immunity, * * * substantial public policies necessitate that even when the state is the defendant, recovery should be denied the injured party." *Calhoun*, 390 A.2d at 632.

"[A] quasi-judicial determination made in good faith … would be entitled to immunity on the part of the agents as well as the sovereign entity that employed them." *Psilopoulos v. State*, 636 A.2d 727, 728 (R.I. 1994); *Mall at Coventry Joint Venture v. McLeod*, 721 A.2d 865, 869 (R.I. 1998) (quasi-judicial immunity was an appropriate rationale for granting judgment as a matter of law where RIDEM passed on a wetlands application). In short, Defendants are entitled to quasi-judicial immunity. Therefore, the claims brought under state law in Counts I, II, III, V, and VI are DISMISSED.

### C. Rooker-Feldman

The State argues that Legend's Creek's claims are barred under the *Rooker-Feldman* doctrine. *Rooker-Feldman*, which the United States Supreme Court described as "a narrow doctrine," *Lance v. Dennis*, 546 U.S. 459, 464 (2006), "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

"[L]ower courts cannot rely on *Rooker-Feldman* to dismiss a case unless, *inter alia*, the federal plaintiff seeks redress of an injury *caused by* an allegedly erroneous state court decision; if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction." *Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*,

8

471 F.3d 220, 222 (1st Cir. 2006) (citing *Exxon Mobil Corp.*, 544 U.S. at 284); *see also Washington v. Wilmore*, 407 F.3d 274, 280 (4th Cir. 2005) (holding that *Rooker-Feldman* does not apply when the plaintiff's "injury rests not on the state court judgment itself but rather on the alleged violation of his constitutional rights by [the defendant]"). That is the situation in this case; Legend's Creek brings claims alleging that the State violated its constitutional rights. As such, the Court cannot dismiss Legend's Creek's claims under *Rooker-Feldman*.

### D. Res Judicata and Collateral Estoppel

Similarly, the doctrines of res judicata and collateral estoppel do not bar Legend's Creek's claims. Those concepts require a final adjudication on the merits of the same claims that are currently before this Court. *Weaver's Cove Energy, LLC v. Rhode Island Conservation Res. Mgmt. Council*, 583 F. Supp. 2d. 259, 278 (D.R.I. 2008). The state court proceedings did not consider or decide any constitutional challenges to RIDOH's decision. As such, Legend's Creek's claims here survive despite the State's argument that they be dismissed as already adjudicated at the state level.

### E. Remaining Claims

The Court now turns to Legend's Creek's remaining claims: two counts alleging an unconstitutional taking (I and II); violations of procedural due process and equal protection (III and V), and a violation of substantive due process (VI).

9

1. Takings Claims

The Takings Clause of the Fifth Amendment, which provides that private property shall not be taken for public use without just compensation, applies to the states through the Fourteenth Amendment. *Torromeo v. Town of Fremont*, 438 F.3d 113, 114 n.1 (1st Cir. 2006). As Plaintiffs point out, the State did not substantively argue that the takings claims should be dismissed, relying on its immunity and estoppel arguments. But essentially, the State seeks to defeat Legend's Creek's takings claims on the grounds that its denial of the water supply permit was at its discretion and in furtherance of the public health and safety as the regulations dictate. The property was not "taken for public use" because the proposed well was to expand Legend's Creek's own existing business in which the public has no interest.

Reviewing the Amended Complaint, the Court finds that it sufficiently alleges a taking. Legend's Creek alleges that Defendants' refusal to permit them to operate a public water supply well on its property because the adjoining junkyard *might* be polluting the ground water or water table constitutes the imposition of a negative or restrictive easement and/or a regulatory taking on the Mill Road Property without just compensation. ECF No. 11 ¶¶ 54-65; *see also id.* ¶¶ 19-27, 39 (alleging lack of data supporting contamination). Plaintiffs allege that Defendants have no evidence that the junkyard is contaminating or could contaminate their property and unfairly places the burden of disproving potential contamination on them which amounts to an unconstitutional taking and diminishes the property's value. *Id.* At this early stage of the proceedings, the Court finds that Legend's Creek has put forth sufficient

allegations of an unconstitutional taking without compensation against the State. Therefore, the Court declines at this time to dismiss Plaintiffs' Fifth Amendment claims brought pursuant to Section 1983. Defendants' motion as to the federal claims Counts I and II is DENIED.

### 2. Procedural Due Process and Equal Protection

"To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [it] of that interest without constitutionally adequate process.'" *González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011) (quoting *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)).

> The test for a procedural due process violation requires the plaintiffs to show first, a deprivation of a protected property interest, and second, a denial of due process. To meet the first prong and show that a "statutorily created benefit" is a property interest, "a person 'must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'"

*Peréz-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 30 (1st Cir. 2008) (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A "legitimate" entitlement "must be grounded in some statute, rule, or policy." *Roth*, 408 U.S. at 576.

"In considering whether state law creates an entitlement, we look primarily to the discretion state law accords state actors to withhold the entitlement from individuals. In general, 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Clukey v. Town of Camden*, 717 F.3d 52, 56 (1st Cir. 2013) (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756

(2005)). "[T]he more circumscribed is the government's discretion (under substantive state or federal law) to withhold a benefit, the more likely that benefit constitutes 'property.'" *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir. 1981).

Plaintiffs did not have a property interest in the public water supply permit and so their claim fails on the first prong of the procedural due process analysis. The state law involved here gives the State the discretion to apply the chapter's requirements and approve or deny an application commensurate with its compliance or noncompliance. *See* R.I.G.L. §§ 46-13-2.1 and 46-13-2.2. When that discretion is not only based on the statutory language but also the public health and safety purpose of the law, Plaintiffs did not have legitimate claim of entitlement to the public water supply permit. The Court dismisses Counts III and V.

### 3. Substantive Due Process

Defendants move to dismiss Plaintiffs' claim in Count VI where they allege that Defendants' decision to deny them a public water supply permit violates substantive due process. In opposing the motion, Legend's Creek asks the Court to apply an arbitrary and capricious standard in analyzing the adequacy of their complaint, which would match their allegations of an "arbitrary, subjective, and unjustified" permit denial. The Court declines to do so in the face of the First Circuit's statement made "with 'a regularity bordering on the monotonous' that to be liable for a violation of substantive due process rights, a defendant must have engaged in behavior that is 'conscience-shocking.'" *Mongeau v. City of Marlborough*, 492 F.3d 14, 17 (1st Cir. 2007). Examples of conduct that has been found to be conscience-

12

shocking are in "cases involving corruption or self-dealing, hampering development to interfere with otherwise constitutionally protected activity, bias against an ethnic group, bribery, and the threatening of municipal officials by political leaders." *Wyrostek v. Nash*, 984 F. Supp. 2d 22, 27–28 (D.R.I. 2013) (internal citations omitted).

In essence, Legend's Creek alleges that RIDOH decided to deny their public water supply permit without knowing whether the property's ground water was polluted or would eventually become polluted. The State counters that it conducted an extensive investigation and determined, in its discretion as allowed under the regulations, that the potential contamination was too much of a risk to the public health to allow the permit. "[T]he substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong." *Pagán v. Calderón*, 448 F.3d 16, 33 (1st Cir. 2006); *PFZ Prop., Inc. v. Rodríguez*, 928 F.2d 28, 31 (1st Cir. 1991) ("[R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." (internal citations omitted)). Plaintiffs' allegations rooted in the permit denial do not rise to the level of a conscience-shocking deprivation of substantive due process. The Court dismisses Count VI.

## IV. CONCLUSION

The Court DISMISSES Counts III, IV, V, and VI.  The Court also DISMISSES the claims brought under state law in Counts I and II.  Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  ECF No. 13.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

June 16, 2023